ENCYCLOPÆDIA BRITANNICA CO. v. AMERICAN NEWSPAPER ASS'N et al.

(Circuit Court, D. New Jersey. June 28, 1904.)

1. COPYRIGHT—VIOLATION OF INJUNCTION AGAINST INFRINGEMENT—CONTEMPT PROCEEDINGS.

    One defendant company was publisher of an encyclopædia, and the other was engaged in soliciting orders for the same, which were filled by it with books obtained from the publisher. A temporary order was granted against both defendants, restraining them from selling or delivering sets containing certain articles alleged to infringe complainant's copyright, and no more of such volumes were thereafter shipped by the publisher. The second company had agencies in different cities, each in charge of a manager, whose duty it was to report each order taken to the company, without whose approval no delivery was authorized to be made thereon. At once on service of the order all managers were notified not to make further deliveries of the volumes involved, but that they might continue to take orders, which would be filled as to such volumes after the court's order should be vacated or the infringing matter eliminated by the publisher. Within the week following service of the order, certain persons employed for the purpose by complainant obtained from such defendant delivery of four sets or parts of sets containing articles within the prohibition, each in a different city, two through a misunderstanding of the manager as to the volumes affected, and two from subordinate employés, having no knowledge of the order, in the absence of the manager, and in each case in violation of the rules of the defendant, and without waiting for the usual instructions, because of urgent demand for immediate delivery. *Held*, that such facts did not warrant an adjudication that either defendant was guilty of contempt, in the absence of any evidence tending to show that the violation of the order was intentional.

In Equity. On rule to show cause why defendants should not be punished for contempt.

Frederic R. Kellogg and John M. Dickinson, for complainant.
John G. Johnson and Rollin M. Morgan, for defendants.

LANNING, District Judge. On June 2, 1904, upon application of the complainant, a rule was allowed requiring the defendants, the American Newspaper Association and the Werner Company, to show cause why a preliminary injunction should not be issued against them. With the rule went an ad interim order restraining the defendants from offering for sale or selling any sets of the Encyclopædia Britannica, heretofore published and sold by the defendants, containing certain

articles on "Galveston," "Georgia," and 17 other subjects, like or substantially like other articles on the same subjects copyrighted under the laws of the United States and published in the complainant's edition of the Encyclopædia Britannica. The affidavits used on the hearing show that, after the restraining order was served on the defendant corporations, four sets of the enjoined volumes were sold and delivered to four persons, one in Philadelphia, one in Pittsburgh, one in Washington, and one in Chicago. The question now to be considered is whether either of the defendant corporations has violated the restraining order and contemned the authority of this court.

The Werner Company has its factory in Akron, Ohio. Paul E. Werner, the president and general manager of the company, first learned of the existence of the restraining order at 2 o'clock in the afternoon of June 3d, in the city of New York. He immediately telegraphed to the factory at Akron to make no shipments of the enjoined books until further instructions from him. The telegram was received by the assistant superintendent about 7 o'clock in the evening of June 3d, and he immediately communicated its contents to the employé having sole charge of the shipping department. It appears, further, that, by the Werner Company's method of conducting its business, no one is authorized to deliver any volume or volumes of the Encyclopædia except upon a written order from Otto G. Schultz to the person in whose charge such volume or volumes may be, and that Schultz gave no order to any person whomsoever for any of the enjoined volumes after June 3d. These statements are sworn to by Paul E. Werner, the president, Edward P. Werner, the assistant superintendent, Otto G. Schultz, the order clerk, and Herman Werner, the shipping clerk. Other statements are sworn to by them, none of which are controverted, which make it clear that the persons who sold and delivered the inhibited volumes did not represent the Werner Company, and that none of these volumes were sold or delivered with the consent or knowledge of any of the officers or employés of the Werner Company.

The business of the American Newspaper Association is, amongst other things, the securing of orders for the Encyclopædia Britannica published by the Werner Company. It has offices in 11 of the principal cities of the United States. Each of these offices is in charge of a manager who hires salesmen to solicit subscription contracts for the Encyclopædia. Every contract received is turned over to the proper manager, who forwards it to the central office of the Newspaper Association in New York City. From this office instructions are forwarded to the managers, and no manager or other person has authority to deliver books upon any contract until after instructions concerning such contract are received. The restraining order was served on the association on June 3d, and on the same day it sent a letter to each of its 11 managers, advising them of the issue of a "temporary injunction," and saying:

"If the case cannot be brought up for decision in court immediately, The Werner Company will simply hold back the six or seven volumes in which the copyrighted articles appear, when making shipments to subscribers, and will prepare entirely new articles to take the place of these few pages, and the

volumes referred to will be shipped later. It is not necessary for the managers to send notice to all the agents or say anything to the agents about it unless the agents mention it to the managers. The agents can go right ahead and take orders just the same as before, and The Werner Company will explain to the subscriber when shipment is made that the other volumes will follow in a short time. This should not in any way interfere with the book."

This letter has been severely criticised by the counsel for the complainant. But it violates neither the letter nor the spirit of the restraining order. Nothing was prohibited by that order except the sale and delivery of volumes containing the articles which the complainant insisted were infringements of its copyrighted articles. The letter shows conclusively that those volumes were to be withheld from sale and delivery until a decision favorable to the defendants should be had, or until new articles should be substituted for the alleged infringing ones. The proofs do not show whether the managers keep on hand a supply of the sets of defendants' Encyclopædia. It is quite probable they do. But even so, they had no authority to deliver any sets except upon instructions from the New York office to do so. At the time the restraining order was served, this rule of business concerning the delivery of books had never been departed from. I am satisfied that neither the officers of the American Newspaper Association, nor its agents at the central office in New York, had any reason to suspect that it would be departed from after such service.

The suggestion of complainant's counsel that it was the duty of the association, immediately upon receiving notice of the restraining order, to telegraph its managers and agents in other cities not to deliver the books in question, is answered by these facts: James L. Armstrong, the manager of the Philadelphia office, understanding that the injunction applied only to the last 6 volumes of the set of 31 volumes, caused the first 25 volumes of the set to be delivered to Walter G. Mulliner on June 6th. In Washington, on June 9th, a full set of 31 volumes was delivered to Lewis T. Hooper by a lady clerk in the Washington office, who had no knowledge of the restraining order, and who made the delivery during the absence of the manager of that office in Richmond, Va. On June 7th the bookkeeper at the Chicago office, having no knowledge of the restraining order, and while the manager of that office was absent on account of the sickness of his father, delivered a full set of 31 volumes to Olinius Olson. And on June 10th William H. Pittenger, the manager at the Pittsburgh office, understanding that the restraining order applied only to the last five or six volumes of the set, delivered the remaining volumes of the set to Thomas M. Reed. Each of the four persons making these deliveries swears that no authority for such deliveries existed, and that they were made, without waiting for the usual orders or instructions from New York, only because of urgent demands for immediate delivery. They each further swear that they have never delivered any other sets or parts of sets to any persons whomsoever without the customary authority. The complainant admits that it employed Mulliner and Olson to purchase the books that were delivered to them. The books obtained by Hooper and Reed were doubtless purchased by like authority. In each of these four sales the circumstances were unusual, and were made so by the com-

plainant alone. Such sales were unprecedented in the business of the American Newspaper Association, and as soon as its officers learned of the sales they telegraphed instructions to all their managers not to deliver any sets of the Encyclopædia except on explicit orders from the New York office.

The facts do not warrant an adjudication that either of the defendant corporations is guilty of contempt, and the rule to show cause will be dismissed, with costs.